## UNION SPECIAL MACH. CO. v. METROPOLITAN SEWING MACH. COR-PORATION.

(Circuit Court of Appeals, Third Circuit. January 29, 1923.)

No. 2897.

Patents ⏧328—1,123,576, claim 16, for multiple needle sewing machine mechanism, held not infringed.

The Onderdonk patent, No. 1,123,576, claim 16, for a multiple needle sewing machine mechanism, designed to form a loop in the under or looper thread, through which the needle may carry the upper or needle thread, *held* not infringed by mechanism in which the loop is not held taut by spreader finger or snubbing post.

Appeal from the District Court of the United States for the District of Delaware; Hugh M. Morris, Judge.

Suit by the Union Special Machine Company against the Metropolitan Sewing Machine Corporation. From a decree dismissing the bill (279 Fed. 770), plaintiff appeals. Affirmed.

Henry N. Paul, of Philadelphia, Pa., and Eugene G. Mason and Charles L. Sturtevant, both of Washington, D. C., for appellant.

Edward S. Beach, of New York City, and Frederick P. Fish, of Boston, Mass., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. This patent case concerns sewing machine mechanism, one of the most intricate arts with which the federal courts have to deal, and such normal intricacy is increased by the fact that the machines here involved sew at the same time as many as six parallel rows of stitches. The record is a large one, and this court gave two entire days to the hearing of the able discussions of counsel concerned. The labors of counsel in arguing and of the court in grasping their arguments were greatly aided by the opinion of the court below, which centered the consideration of the case upon defined issues. An examination of this opinion shows that its involved subject-matter has been simply and accurately stated by one who had mastered the intricacies of the case. The record thus disclosing sufficient descriptions of the respective machines of the parties and their operations, there is no call for restatement, and by reference thereto we save cumbering the record by needless repetition.

After a full hearing and a patient consideration of the case, we are of opinion its gist, and the crucial points wherein error, if such there be, lies, largely center in that portion of the court's opinion (see Record, pages 2214–2217, inclusive) which reads as follows:

"The plaintiff contends that the defendant's present machine contains all the elements of plaintiff's invention, operating in the same way to produce the same result; while the defendant asserts that it differs wholly in mode of operation and substantially in construction from the machine of the Onderdonk patent in suit. Both are multiple needle machines. Both make the Grover & Baker double chain stitch. In both the feed of the fabric is directed

⏧ For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

across the work plate from front to rear and at right angles to the looper shaft. Both are provided with four motion loopers. Plaintiff's machine has a stationary spreader finger dependent from the throat plate at a point immediately in front of the needle hole. Defendant's machine does not have a stationary spreader finger dependent from the throat plate, but it has a groove or slot cut in the bottom of the throat plate. The vertical wall of the slot is in the same relative position with respect to the needle hole as is the vertical wall of plaintiff's spreader finger. The plaintiff asserts that, for the purposes of the combination in suit, defendant's slot, or rather the vertical wall thereof, operates in every respect as a stationary spreader within the meaning of the Onderdonk invention, and within the limitations of the 16th claim of the patent in suit. The defendant asserts that the slot and its wall do not co-operate with the looper to spread the looper loop as does the spreader finger of Onderdonk; that the space between the looper thread loop and the looper blade through which the needle in its descent passes is, in the defendant's machine, created by the automatic projection of the looper thread loop from the side of the looper, and that the slot in defendant's machine serves only the purpose and performs only the function that the 'assistant looper' did in Grover's machine; that is, not spreading the loop by conjoint action with the looper, but the loop having been otherwise opened or spread, insuring its remaining spread until it is entered by the needle.

"I am of the opinion that defendant's contention is correct. As I view the matter, the mode of operation of defendant's machine is entirely different from that of plaintiff's, and there is no substantial identity between defendant's machine and that called for by the sixteenth claim of the Onderdonk patent in suit. Only the more important differences, resulting in a lack of substantial identity in the mode of operation of the two machines, will be stated. In the defendant's machine the orbit of the looper is elliptical, and the major axis of the ellipse is inclined at an angle of about 5½ degrees to the line of feed. In the plaintiff's machine the path of the looper is more nearly parallelogrammatic. It has a distinct lateral movement, taking place between the end of the forward movement and the beginning of the retrograde movement of the looper blade, and the forward and retrograde movements are parallel, or substantially so, with the line of feed. The take-up of the looper thread in defendant's machine is produced by the backward motion of the looper. In the forward motion of the looper, the entire looper blade passes the point at which the needle descends, so that at the end of this movement the eye of the looper is practically the full length of the looper blade beyond that point, and the thread which passes from the last stitch in the fabric to the eye of the looper is consequently carried the length of the looper blade beyond the point at which the needle descends. * * * Consequently, the thread leading from the fabric to the eye of the looper, when in its most advanced position, is made slack by the laterally rearward motion of the looper, and is spread and bowed out therefrom by that retrograde movement, without the aid of a spreader finger or other independent spreader device. The accomplishment of this result seems to be aided by the angle at which defendant's looper reciprocates to the line of feed. The needle penetrates the loop, so spread, before the eye of the looper retreats to the point at which the needle descends. Hence it is only necessary that some means be provided to insure the loop's remaining spread and in proper position until it is entered by the needle. This service, and only this service, as I see it, is performed by the vertical wall of defendant's slot. On the other hand, in plaintiff's machine the looper thread is taut when it is hooked over the spreader finger, and remains so during the lateral movement of the looper and until the loop so spread is penetrated by the descending needle. The positive conjoint action of the spreader finger and the looper is required to spread the loop. The slot as employed in defendant's machine is ineffective 'for engaging each looper thread for separating the looper thread from the body of the looper' as called for by the sixteenth claim of the Onderdonk patent."

We agree with the conclusion so reached by the trial court, to which we may add that the difference between the decisive functional fea-

ture of the looping mechanism of the two machines, stated in simple, nontechnical terms, is the difference between a vanishing, nontaut, loop and one formed by a snubbing post. Such difference is stated by the witness Chapman (Record, page 1222), who says:

"So it is with the looper and its thread; that is, as the looper, after reaching its forward extreme, begins to retrograde or move backwardly, the thread of the looper, extending along the left side of the body thereof, is held frictionally to the body of the looper by the loop of needle thread through which the looper extends, and which is held under tension on the body of the looper at its rear end near its shank. Now, bearing in mind that the right-hand side of the looper body has a groove in which the opposite strand of the looper thread is housed, and that, in consequence, the friction of the needle loop on the body of the looper does not operate upon that housed strand, the strand on the left side of the looper body, which is frictionally held by the needle loop, is caused to bow outwardly and upwardly, and assume a position such that the needle will surely enter the same, for the purpose of producing the concatenation of the looper and needle threads. When the looper thread is thus bowed outwardly and upwardly, it is housed within the groove formed in extension of the enlargement about the needle aperture, thus enabling it to assume the proper position for the passage of the needle. That proper position is produced by the sloping wall of the groove or channel on the left side formed in the bottom surface of the throat plate, which causes said loop to lean over or list slightly toward the left, thus, so to speak, laying the loop down or out for the easy passage of the needle. By contrast, therefore, it may be said that the machine of the patent in suit illustrates nothing more or less than the principle of the snubbing post, while the defendant's machine of Plaintiff's Exhibit No. 2 illustrates, as nearly as the same may be approximated, the principle of the vanishing loop; and this because, as the looper moves rearwardly and the looper thread is formed into a loop, the latter is gradually carried rearwardly and drawn into the body of the fabric around the body of the needle and its thread, and finally disappears up through the throat plate, where it is finally set on the bottom surface of the fabric or work."

So summarizing the gist of the case, and being of opinion the court below committed no error in passing on those decisive features, we affirm the decree on the opinion of the court below, and dismiss the plaintiff's bill.